IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON

| | |
|---|---|
| CRYSTAL L. LAKES on behalf of B.M.O., ) | CASE NO. 1:20-CV-01061-SO |
| ) | |
| Plaintiff, ) | JUDGE SOLOMON OLIVER, JR. |
| ) | UNITED STATES DISTRICT JUDGE |
| v. ) | |
| ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, ) | CARMEN E. HENDERSON |
| ) | |
| Defendant, ) | **REPORT AND RECOMMENDATION** |
| ) | |

**I. Introduction**

Plaintiff, B.M.O ("Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income ("SSI"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court REVERSE the Commissioner of Social Security's nondisability finding and REMAND this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

**II. Procedural History**

On October 24, 2016, Crystal L. Lakes filed an application for SSI on behalf of Claimant, her minor child, alleging a disability onset date of September 22, 2016, and claiming he was disabled due to attention deficit hyperactivity disorder ("ADHD") and oppositional defiant disorder ("ODD"). (ECF No. 14, PageID #: 94). The application was denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ").

1

(ECF No. 14, PageID #: 160). On October 11, 2018, an ALJ held a hearing, during which Claimant—represented by counsel—his mother, and an impartial vocational expert testified. (ECF No. 14, PageID #: 94). On February 21, 2019, the ALJ issued a written decision finding Claimant was not disabled and, therefore, not entitled to SSI. (ECF No. 14, PageID #: 109). The ALJ's decision became final on March 24, 2020, when the Appeals Council declined further review. (ECF No. 14, PageID #: 80).

On May 15, 2020, Claimant filed his Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 18, 20, 21). Claimant asserts the following assignment of error:

> The ALJ did not abide by the treating physician rule when weighing the opinion of treating psychiatrist Jasdeep Sohi, M.D.

(ECF No. 18, PageID #: 1271).

## III. Background

### A. Relevant Medical Evidence

The ALJ summarized Claimant's health records and symptoms:

> In January 2017, the claimant participated in a speech and language development evaluation based upon allegations of speech and language difficulties (Exhibit 4F). The claimant's mother reported that he reached his developmental milestones within normal time frames but indicated that he later had some "speech problems". School records from Erie Intermediate School indicated that the claimant was placed on Individualized Education Program (IEP) from May 12, 2016 through May 11, 2017 for speech therapy services only (Exhibit 3F/16). However, the claimant's mother reported that he continued to make progress in speech therapy objectives throughout the school year (Id. at 17). During the speech language evaluation, the claimant was alert and cooperative . . . and did not need any cues to stay focused on tasks. He received language scores that were within the functional limits for his chronological age. It was indicated that the claimant might have some difficulty expressing his wants, needs, and ideas to others unless he continued to receive speech therapy services. The claimant's prognosis for

2

> remediation of deficits was felt to be good if he could continue to receive speech therapy services through the school in addition to outpatient therapy. . . .
>
> The following month, the claimant participated in a psychological evaluation where he was assessed with attention deficit hyperactivity disorder (Exhibit 5F). It was reported that the claimant had never been retained in school and was currently earning A's B's and C's. He had never had suspensions or expulsions from school. The claimant's mother stated that he was not oppositional but did not appear to listen and forgot to do things. She indicated that he had difficulty paying attention in class and was forgetful and disorganized. She also indicated that he was impulsive, interrupted others, and had trouble taking turns however; she indicated that his medication improved those symptoms. The claimant reported that he did his homework, completed chores around the home, and was able to get his own meals and snacks if he asked permission. . . . There was no indication of any abnormality of mental content. His fund of information was intact and he was able to identify the first president of the United States. He recalled three of three words after a brief delay and was able to recall four digits forward and three digits backward. He was able to perform simple mathematical calculations and calculate serial threes with no errors. He appeared to have age-appropriate insight into his difficulties and it was estimated that he functioned between the low average and average range of intelligence. . . . It was further indicated that the claimant experienced attentional improvement with medication, although he still required prompts and small group instruction.

(ECF No. 14 PageID #: 99–100).

The ALJ also summarized the treatment records of Dr. Jasdeep Sohi, the claimant's treating psychiatrist at Signature Health:

> Treatment records from Jasdeep Sohi, M.D., with Signature Health showed that the claimant was diagnosed with ADHD and ODD and treated with Concerta (Exhibit 8F). Progress notes showed that the claimant's symptoms were amenable to treatment. In September 2016, it was indicated that claimant was adjusting fairly well to his new school (Id. at 33). He reported a good appetite and denied feeling anxious or depressed. The claimant's mother reported that the medication helped with the claimant's ADHD symptoms and while he struggled to listen before his medication became effective, he had good evenings at home. Mental status examination showed that the claimant was alert, oriented, cooperative, and exhibited

3

> good eye contact. Mood and affect were euthymic and thought process was linear and goal directed. Memory was intact. In November 2016, the claimant's mother reported that the claimant continued to do well on his current medications and appeared to be getting better grades in school (Id. at 27). She expressed some worry over the claimant's social skills and his ability to make friends. However, mental status examination remained unchanged and intact. The claimant also reported that he was enjoying school and liked his teacher and classmates. In February 2017, ongoing medication efficacy was reported in addition to doing well in school (Id. at 16). The claimant denied any bullying at school and reported that he had a good appetite and was sleeping well most nights. In May 2017, it was reported that the claimant's medication wore off in the evening; however, he continued to do well in school without complaints, had been sleeping well most nights, and appetite was only slightly decreased throughout the day (Id. at 8). The claimant was assessed with stable symptoms of ADHD and it was indicated that he could skip his medications on the weekends. The claimant was a no call/no-show for his July 2017 appointment (Exhibit 6F/12). At the subsequent appointment the following month, it was reported that the claimant continued to do well on his current medication with good sleep and appetite (Id. at 11). Symptoms of oppositional defiant disorder were denied. Similarly, in November 2017, the claimant continued to do well at school, no behavior problems were reported, he was sleeping well most nights, appetite was improved, and the claimant denied feeling depressed or anxious (Exhibit 7F/8).
>
> Subsequent progress notes from Signature Health show that the claimant remained stable on medication (Exhibit 9F). In February 2018, the claimant exhibited good eye contact, cooperative behavior, and euthymic affect (Id. at 10). Speech was normal, thought process was linear and goal directed, fund of knowledge was average, and recent and remote memory were intact. It was reported that the claimant was doing well in school and was always rewarded for good behavior. He was sleeping and eating well and denied feeling depressed or anxious. In May 2018, it was indicated that the claimant's grades had improved further and that his medication continued to be beneficial (Id. at 6).

(ECF No. 14, PageID #: 100–101).

B. **Opinion Evidence at Issue**[1]

1. **Treating Psychiatrist — Jasdeep Sohi, M.D.**

In May 2018, Dr. Sohi submitted a medical statement regarding Claimant's functional limitations. (ECF No. 14, PageID # 644). He opined that Claimant had a marked limitation in the domain of attending and completing tasks. Regarding Dr. Sohi's opinion, the ALJ stated:

> The undersigned accords great weight to the assessments of Dr. Sohi. The opinions of the treating physician are considered more reliable because of the duration of the treating relationship (*see* 20 CFR 416.927(d)(2). Dr. Sohi's opinions regarding the claimant's functional limitations are highly credible as they are well-supported by the objective medical evidence and are consistent with the record [as] a whole, including the claimant's history of ADHD and ODD in addition to the implementation of the claimant's IEP for the 2016-2017 school year (Exhibits 3F, 5F-9F).

(ECF No. 14, PageID #: 102).

2. **Impartial Medical Expert — Alan Meyers, M.D.**

Dr. Meyers, the impartial medical expert, opined that Claimant had a less than marked limitation in the domain of acquiring and using information. (ECF No. 14, PageID #: 103).

Regarding Dr. Meyer's opinion, the ALJ stated:

> In determining the claimant's functional limitations, the undersigned has given partial weight to the opinions of the impartial medical expert, Alan Meyers, M.D. . . . In this case, specifically, Dr. Meyers, a specialist of pediatrics, had an awareness of the majority of the medical evidence of record, was present at the hearing to question the claimant and to hear his testimony, and understood Social Security disability programs and requirements. However, the undersigned also finds that Dr. Meyers' assessment of marked limitations in the domain of social functioning is somewhat inconsistent with the objective record. . . . Nonetheless, Dr. Meyer's opinions overall are reasonable and consistent with the objective medical evidence, including treatment reports, education records,

---

[1] Claimant only challenges the ALJ's finding regarding his limitation in the functional equivalence domain of attending and completing tasks. The court, therefore, focuses only on medical opinions relevant to that domain.

> the opinions of the claimant's treating psychiatrist, the findings of the psychological examiner (Exhibits 14E-17E, 1F, 4F-5F, 9F, 10F).

(ECF No. 14, PageID #: 102).

### 3. State Agency Medical Consultants

The State Agency medical consultants opined that Claimant had a less than marked limitation in the domain of attending and completing tasks. (ECF No. 14, PageID #: 134). Regarding their opinion, the ALJ stated:

> The undersigned accords partial weight to the opinions of the State Agency medical consultants (Exhibits 1A, 3A). . . . The physicians with Disability Determination Services are trained health professionals and are familiar with the social security administrative disability process. The examiners had the opportunity to review the entire medical file as the evidence became available, thus the opinions are supported by the substantial evidence of record. Specifically, the opinions are supported by claimant's lack of a specified learning disorder, history of ADHD with stable symptomology with medication management, his ability to interact appropriately with the psychological consultative examiner, regular school attendance, lack of self-injurious behaviors, and his lack of deficits in physical functioning. However, the undersigned finds more restrictions are warranted, specifically in the domains of acquiring and using information . . ., given the claimant's . . . mother's concerns regarding his inability to complete tasks (Exhibits 17E, 3F, 6F-9F).

(ECF No. 14, PageID #: 103).

## IV. The ALJ's Decision

Relevant to this appeal, the ALJ found that Claimant has a less than marked limitation in attending and completing tasks. (ECF No. 14, PageID #: 105). In making this determination, the ALJ stated:

> The record reflects that the claimant has a history of ADHD for which medication management was initiated. However, progress notes showed that the claimant's ADHD symptomology was stable and controlled. During the psychological evaluation from February 2017, the claimant sat quietly through the examination and was able

6

> to perform simple mathematical calculations and calculate serial threes with no error. It was indicated that the claimant experienced attentional improvement with medication, although he still required prompts and small group instruction.

The ALJ did not give a specific reason for disagreeing with Dr. Sohi's opinion that Claimant had a "marked" limitation in attending and completing tasks.

The ALJ also found that Claimant has a marked limitation in acquiring and using information. (ECF No. 14, PageID #: 104). Because a finding of disability requires finding a marked limitation in two domains of functioning, however, he found that Claimant was not disabled. Thus, the ALJ found Claimant was not entitled to SSI.

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be

affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

An individual under the age of eighteen is considered disabled if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 1382c(a)(3)(A). The regulations provide a three-step process for evaluating a child's disability claim. 20 C.F.R. § 416.924(a). First, the ALJ must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). Second, the ALJ must establish whether a claimant has a severe medically determinable impairment. 20 C.F.R. § 416.924(d). Third, the ALJ must consider whether the claimant has an impairment or combination of impairments that meets or medically equals the listings. 20 C.F.R. § 416.924(d). If a severe impairment does not meet or medically equal any listing, the ALJ must decide whether it results in limitations that functionally equal the listings. 20 C.F.R. § 416.926a.

In determining whether an impairment or combination of impairments functionally equals the listings, the ALJ assesses the claimant's functioning in terms of six domains: 1) Acquiring and Using Information; 2) Attending and Completing Tasks; 3) Interacting and Relating with Others; 4) Moving About and Manipulating Objects; 5) Caring for Self; and 6) Health and Physical Well-Being. 20 C.F.R. § 416.926a. In making this assessment, the ALJ compares how the claimant performs with children who do not have an impairment. 20 C.F.R. § 416.924a(b). To functionally equal the listings, the claimant's impairment must result in "marked" limitations in two domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d).

8

## C. Discussion

Claimant raises one issue on appeal. Claimant argues that the ALJ violated the treating physician rule by failing to find that Claimant had a marked limitation in attending and completing tasks without giving "good reasons" for discounting this portion of Dr. Sohi's opinion.

### 1. The Treating-Physician Rule

Under the treating physician rule,[2] an ALJ "must" give a treating source opinion controlling weight if the treating source opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Blakley* v. *Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2) (eff. to July 31, 2006)[3])). "It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent the with other substantial evidence in the case record." SSR 96–2p, 1996 WL 374188, at *2 (July 2, 1996).

"If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley*, 581 F.3d at 406 (citing *Wilson*, 378 F.3d at 544); *see also* 20 C.F.R. § 404.1527(c)(2) (eff. Aug. 24, 2012). "In addition to balancing the factors to determine what weight to give a treating source opinion denied controlling

---

[2] The regulations for handling treating source evidence have been revised for claims filed after March 27, 2017. *See* 20 C.F.R. § 416.927. Claimant filed his claim before the revision took effect.

9

weight, the agency specifically requires the ALJ to give good reasons for the weight actually assigned." *Cole v. Astrue*, 661 F.3d 931, 938 (6th Cir. 2011); § 404.1527(c)(2). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting SSR No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). "This procedural requirement 'ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Failure to follow this requirement and identify the reasons for discounting the opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (citations omitted). The ultimate question is whether the Commissioner's decision is supported by substantial evidence and whether it was made pursuant to proper legal standards. *Cole*, 661 F.3d at 939.

Dr. Sohi, Claimant's treating physician, submitted a medical statement regarding Claimant's functional limitations. The ALJ found that Dr. Sohi's opinions were "highly credible," "well-supported by the objective medical evidence," and "consistent with the record [as] a whole, including the claimant's history of ADHD and ODD in addition to the implementation of the claimant's IEP for the 2016-2017 school year." (ECF No. 14, PageID #: 102). Without any explanation, however, the ALJ accorded only "great weight" to Dr. Sohi's opinion. Claimant argues that this failure to give "good reasons" was outcome determinative and, thus, constitutes reversible error. Because the ALJ found a marked limitation in another domain, Claimant correctly states that had the ALJ also found, like Dr. Sohi, that Claimant had a marked

limitation in attending and completing tasks, Claimant would have met the standard for a disability. *See* 20 C.F.R. § 416.926a(d) (requiring "marked" limitations in two of the domains for a finding of functionally equaling the listings).

The Commissioner does not argue that the ALJ gave good reasons for assigning only "great weight" to or straying from Dr. Sohi's opinion, but instead argues that substantial evidence supports the ALJ's decision. (ECF No. 20 at 11–12). The Commissioner correctly points out that "the good reason requirement does not require conformity at all times." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 440 (6th Cir. 2010). "Violation of the rule constitutes harmless error if the ALJ has met the goals of the procedural requirement—to ensure adequacy of review and to permit the claimant to understand the disposition of his case—even though he failed to comply with the regulation's terms." *Id.* The ALJ can meet these goals by "*indirectly* attacking the supportability of the treating physician's opinion or its consistency with other evidence in the record." *Id.*

However, here, the ALJ did not even indirectly attack Dr. Sohi's opinion. In fact, the ALJ directly bolstered Dr. Sohi's opinions. He specifically stated Dr. Sohi's opinions were "highly credible," "well-supported by the objective medical evidence," and "consistent with the record [as] a whole." (ECF No. 14, PageID #: 102). Not only does this fail to constitute an indirect attack, but also these findings alone required the ALJ to give Dr. Sohi's opinion controlling weight. *See* SSR 96–2p, 1996 WL 374188, at *1 (July 2, 1996) ("If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; i.e., it must be adopted."). The ALJ, therefore, erred by failing to give Dr. Sohi's decision controlling weight and thus not adopting his opinion regarding Claimant's limitation in the domain of attending and completing tasks.

11

Moreover, even if there were good reasons to give only "great weight" to Dr. Sohi, the ALJ still failed to explain the reasons for the weight given. As explained above, when an ALJ does not give controlling weight to a treating physician's opinion, he must consider the factors set forth in 20 C.F.R. § 404.1527(c)(2) and give good reasons for the weight given. *Blakley*, 581 F.3d at 406. Of the factors identified in 20 C.F.R. § 404.1527(c)(2), the ALJ discussed only the supportability and consistency of the opinion with the record as a whole. Both factors were considered favorably and do not explain giving great weight as they directly support a finding of controlling weight. The ALJ, therefore, also erred by failing to build a logical bridge for the Court to understand why Dr. Sohi's opinion was not given controlling weight.

The Commissioner further asserts that even if the ALJ failed to explain his decision, such error was harmless as Dr. Sohi's opinion was a mere "checkbox opinion" and the ALJ balanced it against every other medical opinion in the record. (ECF No. 20 at 11–12). It is true that the other medical experts opined that Claimant had a less than marked limitation in the domain of attending and completing tasks. However, the ALJ specifically gave each of the other experts' opinions less weight than Dr. Sohi's and explicitly stated why he disagreed with them—something he failed to do with Dr. Sohi's opinion.

Specifically, Dr. Sohi concluded that Claimant had a marked limitation in attending and completing tasks. Despite seemingly agreeing with Dr. Sohi's opinions, the ALJ found that that Claimant had a less than marked limitation in this domain. The ALJ reasoned that medication improved Claimant's symptoms and Claimant sat quietly through the psychological examination given in 2017. He additionally stated that Claimant "was able to perform simple mathematical calculations and calculate serial threes with no error." (ECF No. 14, PageID #: 105). The ALJ did not, however, give Dr. Sohi's opinion the correct weight or explain the weight given. Failure to

identify reasons for discounting the opinion of a treating physician "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243. The ALJ was required to discuss his decision to discount Dr. Sohi's opinion and "relying on other information in the record to explain the omission would result in the Court engaging in *post hoc* rationalization, which is prohibited." *Miller v. Comm'r of Soc. Sec.*, No. 1:13-CV-1872, 2014 WL 3950912, at *13 (N.D. Ohio Aug. 12, 2014) (citing *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192 (6th Cir. 2009); *Martinez v. Comm'r of Soc. Sec.*, 692 F. Supp. 2d 822, 826 (N.D. Ohio 2010)).

The ALJ, therefore, erred by both failing to explain his decision for not giving Dr. Sohi's opinion controlling weight and for failing to provide good reasons for giving the opinion "great weight." Dr. Sohi's opinion that Claimant has a marked limitation in attending and completing tasks is outcome determinative. Thus, the error is not harmless and the matter should be remanded for further consideration and explanation.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court REVERSE the Commissioner of Social Security's nondisability finding and REMAND this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

Dated: September 1, 2021

s/ *Carmen E. Henderson*<br>
CARMEN E. HENDERSON<br>
U.S. MAGISTRATE JUDGE

_____

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections

within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).